UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Roscoe Chambers, | ) | |
|        Petitioner, | ) | |
| | ) | No. 20 CV 50148 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| Andrew Ciolli,[1] | ) | |
|       Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Roscoe Chambers seeks restoration of 41 days of good conduct time that he lost for allegedly possessing a weapon. For the reasons that follow, his petition [1] is denied. His motion for a report on the status of his previously-denied motion for injunctive relief [15] is denied as moot.

## BACKGROUND

Mr. Chambers is an inmate at AUSP Thomson. He is serving a 360-month sentence after being convicted of multiple federal drug offenses in the Southern District of Iowa. *See United States v. Roscoe Chambers*, Case No. 12 CR 71 (S.D. Iowa). According to the Bureau of Prisons website, his projected release date is September 15, 2038.

Mr. Chambers lost 41 days of good conduct time after an incident on September 27, 2019, at his current facility, AUSP Thomson. According to a Bureau of Prisons incident report, during a search of his cell, officer D. Spyker found three bars of soap tied at the end of a sock fashioned to be a homemade weapon, which the officer found underneath Mr. Chambers' mattress. Dkt. 9 at 80. Mr. Chambers was reported to be the sole occupant of that cell. *Id.* Based on the incident report, on September 30, 2019, the Bureau of Prisons referred the allegations to the FBI, but on October 2, 2019, the FBI reported back that it was declining to pursue the matter. *Id.* at 82. After the FBI declined to pursue the matter, on October 2, 2019, Lieutenant Murillo delivered a copy of the incident report to Mr. Chambers. *Id.* at 80. That same day Lieutenant R. Williams investigated the incident, spoke to Mr. Williams, and reported in a written investigation that Mr. Chambers had stated, "Those are not mine." Dkt. 9 at 81. In his report, Lt. Williams concluded that the evidence he had gathered supported charging Mr. Chambers with possession of any instrument used as a weapon, Prohibited Act Code 104, and he referred the matter to the Unit Disciplinary Committee. *Id.* Officer D. Boyer conducted the UDC hearing on October 4, 2019. *Id.* at 80. During the hearing, Mr. Chambers stated that he had no weapon, that he possessed only one pair of socks and those were on his feet during the incident, and that the incident report was fabricated to protect officers who had assaulted him earlier that same day. *Id.* at 80. Officer Boyer referred the matter to the Disciplinary Hearing

---

[1] The warden of AUSP Thomson is now Andrew Ciolli. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant to this suit.

Office. *Id.* DHO Officer T. Ingram held Mr. Chambers' disciplinary hearing on November 4, 2019. *Id.* at 77. In a written decision, the disciplinary officer found that based on the greater weight of the evidence, Mr. Chambers had committed the prohibited act of possession of a weapon and sanctioned him as follows: 41 days loss of good conduct time, 15 days of disciplinary segregation, and 90 days loss of phone, commissary, and visiting privileges. *Id.* at 78-79.

In a petition filed under 28 U.S.C. § 2241, Mr. Chambers seeks the return of his 41 days of good conduct time. In support, he argues that he was denied good conduct time without due process because (1) his staff representative refused to present his evidence, present testimony from his witnesses, or review camera footage of the incident, which would have shown officers planting the weapon in his cell; (2) he was never given fair notice of what conduct is prohibited; (3) it was a conflict of interest for Lt. Murillo to deliver the incident report to him; and (4) it took staff five days to deliver to him the incident report, and 20 days to deliver the disciplinary hearing officer's report, which denied him proper notice and left him unable to appeal the decisions. The petition is now fully briefed.

## ANALYSIS

Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good time credits by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record supporting the disciplinary decision. *See Henderson v. U.S. Parole Com'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by the respondent. *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The respondent concedes that Mr. Chambers exhausted his administrative remedies. Dkt. 9 at 5.

Before focusing on the four ways in which Mr. Chambers contends he was denied due process, the Court first addresses an argument he raises in his reply brief that the respondent's counsel violated 28 C.F.R. § 50.15 by responding to his petition, and so the response should be disregarded. Reply [11] at 1-2. Specifically, he contends that respondent's counsel did not obtain authorization from the United States Attorney General to appear for the respondent. *Id.* In fact, the regulation allows the Attorney General "or his designee" to decide whether to represent a federal employee. *See* 28 C.F.R. § 50.15. Other than Mr. Chambers' bald assertion, he points to no evidence that respondent's counsel's appearance is unauthorized. Nor does the Court have reason to believe that counsel appeared without authorization, or to address the argument further.

### 1. Denied Right to Present Witnesses and Evidence

Mr. Chambers contends that he was denied due process because the staff representative that represented him during his disciplinary hearing "refuse[d] to present my evidence and review the camera footage, and have my witness testify." Petition [1] at 6. Had the staff representative viewed the footage, Mr. Chambers contends the footage would have revealed that officers obtained a pair of socks from a pile of clothes outside his cell to make the weapon planted under his mattress. To begin, Mr. Chambers' contention that his staff representative did not review the camera footage is unsupported by the record. According to the disciplinary hearing officer's report, both the staff representative and Special Investigative Agent Ramirez reviewed the footage and provided statements about its content. Dkt. 9 at 77. The staff representative stated that he could not see if Mr. Chambers was wearing socks, while agent Ramirez stated that he could not tell if what Mr. Chambers was wearing were socks or shower slides. *Id.* The staff representative reported nothing about the footage depicting a pile of clothes outside Mr. Chambers' cell or any officer holding a sock.

As for witnesses and evidence, Mr. Chambers does not identify the witnesses or evidence he contends he was unable to present, leaving the Court unable to assess whether his due process rights were impacted. Moreover, his assertion that he was denied the opportunity to present witnesses and evidence is unsupported by the record. According to the DHO report, Mr. Chambers exercised his right to present witnesses: two of the witnesses he requested were unavailable but submitted written statements (agent Ramirez and Unit Manager Woods), while two others did not submit written statements (an unidentified FBI agent and Lt. Martinez). Dkt. 20 at 80.

Although *Wolff* establishes that due process entitles a prisoner to present witnesses at a disciplinary proceeding, it does not entitle the prisoner to "call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). As for the two witnesses who did not submit written statements, Mr. Chambers has not identified what testimony or statements they would have given. According to the government, neither witness was present for the events described in the incident report and so would have had no first-hand knowledge of what occurred. According to the DHO report, the only statement Lt. Martinez could have offered would have been a description of what is depicted in the camera footage, but such a statement would have been redundant of the statements given by Ramirez and Mr. Chambers' staff representative, who had already described the camera footage for the

hearing officer. Dkt. 9 at 80. Accordingly, Mr. Chambers has not identified any due process violation based on being unable to present witnesses or evidence, including evidence of what the camera footage depicted.

### 2. Fair Notice

Next, Mr. Chambers contends that he was denied fair notice of what conduct constitutes a disciplinary violation because he never received a rule book at AUSP Thomson, which he contends is required under the Bureau of Prisons' Admission and Orientation Program, *see* Bureau of Prisons Program Statement 5290.14. Dkt. 1 at 6; Dkt. 11 at 2. Mr. Chambers does not specify what part of 5209.14 requires that he be given a rule book by each new institution to which he is relocated, nor does he point to authority establishing that due process requires each institution to give him a rule book. AUSP Thomson is not Mr. Chambers' first institution, *see* Dkt. 9 at 97-135 (grievances Mr. Chambers filed at each of his institutions), and the Bureau of Prisons' Inmate Discipline Program, which identifies possession of a weapon as a prohibited act, presumably applies at all facilities, *see* Bureau of Prisons Program Statement 5270.09 ("Inmate Discipline Program"), Table 1 Prohibited Acts and Available Sanctions #104. Although his prison disciplinary records have not been presented in this case, they are part of the record in another of Mr. Chambers' habeas petitions, *see Chambers v. Ciolli*, No. 20 CV 50135 (N.D. Ill.), and those records (Dkt. 20 at 182-85) reveal that Mr. Chambers was previously disciplined and lost good conduct time on multiple occasions before the instant incident. Although those incidents involved assault or threatening bodily harm, Mr. Chambers cannot seriously contend that he knew those activities were prohibited but thought that inmates were allowed to possess weapons. Indeed, it is crime for most anyone to possess a dangerous weapon in a federal facility. *See* 18 U.S.C. § 930.

### 3. Lt. Murillo

Mr. Chambers argues that he was denied due process when Lt. Murillo delivered the incident report to him. He contends that Lt. Murillo delivering the report created a conflict of interest because Lt. Murillo was also involved in the underlying incident. An official directly involved in the incident cannot served on the board that hears the charges against an inmate. *See Piggie*, 342 F.3d at 667. But Mr. Chambers does not contend that Lt. Murillo played any role in deciding the disciplinary proceedings against him, and therefore has not established any due process violation based on Lt. Murillo delivering the report.

### 4. Incident Report Delivered Late

Finally. Mr. Chambers contends that he was denied due process because he received the incident report five days after the incident, and received the DHO hearing report "after 20 days." Dkt. 1 at 7. As a result, he contends his right to appeal was delayed. Under Bureau of Prisons regulations an incident report is "ordinarily" delivered to an inmate within 24 hours of the incident. 28 C.F.R. § 541.5(a). However, when "it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation," in which case the incident report should be delivered to the inmate by the end of the business day following release by the investigating agency. Inmate Discipline Program § 541.5(b). According to the incident

report itself, it was forwarded to the FBI, and the FBI released the matter on October 2, 2019, the same day Lt. Murillo delivered the incident report to Mr. Chambers. Dkt. 9 at 80-81. Mr. Chambers contends that delivery of the incident report was late because claims that it was referred to the FBI are a lie. Dkt. 11 at 3. But Mr. Chambers points to no evidence that the incident report was not referred to the FBI, and in fact the incident report and a separate referral form attached to the government's response brief both corroborate that it was. Dkt. 9 at 80-84. The Court notes further that due process requires only that an inmate receive notice of the charges against him 24 hours before any hearing. *Wolff v. McDonnell*, 418 U.S. at 564. Mr. Chambers' disciplinary hearing occurred nearly a month after he received the incident report, and so he has identified no due process violation stemming from the delivery of the incident report.

As for the DHO report, under Inmate Discipline Program § 541.8(h), an inmate "ordinarily" gets a copy of the DHO report within 15 work days of the decision. Mr. Chambers' DHO report is dated November 18, 2019, but Mr. Chambers did not get it until December 11, 2019, more than 15 work days later. Dkt. 9 at 79. However, § 541.8(h) states only that the report is "ordinarily" delivered within 15 work days. In addition, Mr. Chambers has not identified any prejudice he suffered as a consequence of the late delivery. He appealed the DHO decision, which was denied on the merits, and so he did not suffer any delay in obtaining relief from the decision. Dkt. 9 at 172. As a result, he has not established a due process violation based on the delivery of the DHO report.

The Court briefly addresses two more of Mr. Chambers' contentions, both raised for the first time in his reply brief. He contends that he was denied due process for the additional reasons that officer Boyer should never have conducted the UDC hearing because he is a correctional officer, not a member of the unit team, and because the UDC hearing must be conducted by two or more members. Arguments first raised in a reply brief are forfeited. *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009). But even if not forfeited, the arguments are unavailing. First, Mr. Chambers has not identified under what rule or regulation officer Boyer was ineligible to conduct his UDC hearing. Second, "[o]nly one unit staff member is required to hold an initial review when the incident report is required by policy to be referred to the DHO." Inmate Discipline Program § 541.7(b). Possession of a weapon is a Greatest Severity level prohibited act, *id.* at Table 1, and such incidents are required to be referred to the DHO, *id.* § 541.7(a)(4).

## CONCLUSION

For the reasons given, Mr. Chambers' petition [1] is denied, and this case is closed. Mr. Chambers is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Chambers need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e)

motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

To the extent one is required, the Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Mr. Chambers cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of his § 2241 petition. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2), and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).


Date: September 15, 2021          By: _____
                                       Iain D. Johnston
                                       United States District Judge